LINDA REIVITZ, Secretary Department of Health and SocialServices
Your predecessor requested my opinion on a number of questions relating to the open records law, chapter 335, Laws of 1981:
 1. According to s. 19.35 (4), if an oral request for a record is denied the reasons for the denial can be given orally unless the requester, within 5 business days after the denial, requests a written statement of the reasons. Under these circumstances, can the *Page 69 
request for a written statement be presented orally, or can we insist that the request for written reasons be presented in writing?
Section 19.35 (4)(b) provides as follows:
 If a request is made orally, the authority may deny the request orally unless a demand for a written statement of the reasons denying the request is made by the requester within 5 business days of the oral denial. If an authority denies a written request in whole or in part, the requester shall receive from the authority a written statement of the reasons for denying the written request. Every written denial of a request by an authority shall inform the requester that if the request for the record was made in writing, then the determination is subject to review upon petition for a writ of mandamus under s. 19.37
(1) or upon application to the attorney general or a district attorney.
In my opinion, the demand for a written statement of the reasons denying the request may be made orally. The law does not authorize an authority to insist that the demand be in writing.
 2. If timely oral requests for written denial reasons must be honored under s. 19.35 (4), does the requester have a right to enforcement pursuant to s. 19.37? If not, must the requester still be notified that, if the original request was in writing, enforcement rights would be available? (Section 19.37 seems to say that only requests originally presented in writing are enforceable, yet s. 19.35 (4) states that every written statement of denial reasons must include certain language concerning enforcement.)
Section 19.37 (1) states in part that "[i]f an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may pursue either, or both, of the alternatives under pars. (a) and (b)."
The remedies provided by section 19.37 are available only after a written request for disclosure is made. However, under section19.35 (4)(b) a written denial of an oral request must inform the requester that if the request for the record was made in writing, then the determination is subject to review pursuant to section19.37 (1).
 3. The Department of Health and Social Services often has computer data without having a presently existing printout of the *Page 70 
data. Section 19.35 (1)(e) requires us to produce printouts for examination by requesters. I am informed that the cost of a computer run to produce a printout can frequently be quite expensive. If the requester wishes to obtain his or her own copy of the printout, can the cost of the computer run be charged to the requester as a copying fee? If the requester merely wishes to examine the printout, rather than to obtain a copy, could the computer run cost be charged as a record location fee (if at least $50) or as some other type of fee?
Section 19.35 (1)(e) provides that "[e]xcept as otherwise provided by law, any requester has a right to receive from an authority having custody of a record which is not in a readily comprehensible form a copy of the information contained in the record assembled and reduced to written form on paper."
Section 19.35 (3)(a) and (c) states as follows:
 (a) An authority may impose a fee upon the requester of a copy of a record which may not exceed the actual, necessary and direct cost of reproduction and transcription of the record, unless a fee is otherwise specifically established or authorized to be established by law.
. . . .
 (c) Except as otherwise provided by law or as authorized to be prescribed by law, an authority may impose a fee upon a requester for locating a record, not exceeding the actual, necessary and direct cost of location, if the cost is $50 or more.
Section 19.35 (1)(e) gives any requester the right to receive from an authority a copy of the information contained in the record "assembled and reduced" to written form on paper. Section19.35 (3)(a) authorizes the authority to impose a fee upon the requester for the actual, necessary and direct cost of "reproduction and transcription" of the record. In my opinion, the reproduction and transcription of a record includes the assembly and reduction of the record to written form on paper. Therefore, you may impose the cost of the computer run on the requester as a copying fee. However, I do not believe you may impose the cost of the computer run on the requester as a location fee under section 1 9.35 (3)(c) since you do not have to locate the record. All that needs to be done is to reduce the information contained in the record to a readily comprehensible *Page 71 
form on paper. I am not aware of any other statutes that would justify imposing the cost of the computer run on the requester.
 4. In an unpublished opinion of April 30, 1979 (OAG 50-79), you concluded that s. 146.38, Stats., does not apply to records of this Department's activities. The opinion responded to questions concerning official health regulatory activities of this Department as an agency. This Department's staff, however, occasionally serve on private health care services review organizations, doing so with DHSS sponsorship or encouragement. Such staff may have records of their activities on behalf of the private organization at the premises of their DHSS offices. I presume these records must be treated as records of the Department of Health and Social Services. Under such circumstances, do the confidentiality restrictions of s. 146.38 apply to the records our staff hold of their private organization activities'?
The question may be restated: When a member of the staff of the Department is a member of and has in his or her possession records of a review or evaluation organization within the purview of section 146.38, do such records which otherwise would be nonpublic records become public records by virtue of their being in the custody of a member of the staff of the Department?
The answer depends on whether the record has been created or is being kept by the Department, or you as its secretary and acting in such capacity. Section 19.32 (2) defines record as any material on which is recorded or preserved information "which has been created or is being kept by an authority." For purposes of this question, authority is defined in section 19.32 (1) at a state office or agency.
If the records of a review or evaluation organization were not prepared for the benefit or use of the Department, or you as its secretary, and are not in the possession of a member of the staffin his or her capacity as such, they would not be public records within the definition of that term found in section 19.32 (2). They would be private records and their mere possession by a public officer or employe does not, absent the aspects embraced in section 19.32 (2), convert them into public records. The fact that the person having custody of such records is a staff member is an incidental and nonmaterial fact. *Page 72 
If, however, the records were prepared for the Department or for you as its secretary, to serve a Department aim, function or need then the staff member would possess the records as a staff member and such status would no longer be an incidental and nonmaterial fact.
I would consider material to the issue a consideration of whether participation in the activities of the review or evaluation organization by a member of the staff of the Department involves the use of state time or money, whether such participation is required by the staff member's prescribed duties or necessary for the proper fulfillment of the Department's statutory duties and whether such participation is pursuant to relationship between the Department and the review or evaluation organization for the mutual advantage of each. If any of these questions must be answered in the affirmative, the presumption would be that such participation is a proper function of the Department and that the materials resulting from such participation are public records.
BCL:JJG